# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE NICHOLS, | ) |
| PLAINTIFF, | ) ) ) |
| vs. | ) ) CASE NO. 08-CV-457-FHM ) |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration, | ) ) ) ) ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, George Nichols, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's May 4, 2004 application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held May 23, 2006, after which psychological and physical consultative examinations were conducted. A supplemental hearing was held January 3, 2007. By decision dated February 5, 2007, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on July 25, 2008. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 43 years old at the time of the first hearing. [R. 440]. He claims to have been unable to work since December 18, 2002, due to a combination of physical and mental problems. [Plaintiff's Brief, Dkt. 11, p.4]. The ALJ determined that Plaintiff has severe impairments consisting of neck and back pain, limitation of motion in arms, history of polysubstance abuse in remission by claimant report, and borderline intellectual functioning. [R. 19]. The ALJ found that Plaintiff retains the residual functional capacity (RFC) to: lift and carry up to 20 pounds frequently and up to 50 pounds occasionally; sit up to 4 hours at a time (with normal breaks) for a total of 8 hours in an 8-hour workday; stand and/or walk up to 4 hours at a time (with normal breaks) for a total of 8 hours in an 8-hour workday; occasionally bend, stoop, crouch and crawl; carry out simple, unskilled tasks and relate to supervisors and co-workers on a superficial basis; that he should have minimal contact with the public and would be able to adapt appropriately to changes in the work setting. [R. 20]. Based upon the testimony of a vocational expert (VE), the ALJ found that Plaintiff could not return to his past relevant work but that there are other jobs available in the economy in significant numbers that Plaintiff could perform with that RFC. [R. 27-28]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 28]. The case was thus decided at step five of the five-step evaluative sequence

for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the following errors: 1) "The ALJ errored (sic) in failing to analyze the diagnoses of depressive condition, chronic schizoid adjustment and anti-social personality disorder, and also failing to document the 'PRTF technique' based on that analysis in the Decision;" 2) "The ALJ failed to mention or discuss the characteristics of the psychological profile of the plaintiff as shown by the MMPI-II test;" 3) "The ALJ errored (sic) by finding that plaintiff was less credible for an emotional conditions set out by the psychological CE;" 4) "The ALJ erroneously failed to discuss plaintiff's mother's and father's testimony that supported plaintiff's claim of mental disability, and failed to explain why he implicitly rejected it;" and 5) "It was error for the ALJ to deny the claim at Step 5 based on jobs that the VE admitted could not be performed by a person who had the deficiencies set out in the narrative portion of the psychological CE's report." [Dkt. 11, p. 2]. For the reasons discussed below, the Court affirms the decision of the Commissioner.

At the first hearing on May 23, 2006, the ALJ concluded that further development of the case was necessary and he adjourned the hearing until physical and consultative medical evaluations could be conducted. [R. 453, 462]. The ALJ held a supplemental hearing on January 3, 2007, after obtaining reports from those examinations. [R. 464-509]. Because Plaintiff challenges only the ALJ's mental impairment findings based upon Dr. Hickman's opinion, the Court limits its discussion of the record to that evidence, although the entire record has been reviewed.

3

## Dr. Hickman's Opinion

The mental evaluation was performed by John W. Hickman, Ph.D., on July 19, 2006. [R. 359-366]. Dr. Hickman took Plaintiff's family, social educational, vocational and medical history. [R. 359-360]. He noted Plaintiff reported he never felt he fit in his family, that he could not comprehend what he read in school and that he was in special education classes until he dropped out of school in the ninth-grade. [R. 359]. Plaintiff stated he worked in the construction industry but never held a job more than four to six months; that he usually loses his motivation and quits. [R. 359-360]. Plaintiff reported he lives in a trailer behind his parents' house and spends his time sitting around; does some housework and yard work and watches TV and that he does not have a driver's license. [R. 360]. Plaintiff told Dr. Hickman he was not taking prescribed medications but would borrow or buy Lortab and Vicodin from his friends. [R. 36]. Dr. Hickman noted Plaintiff's hospitalization in the Grand Lake Mental Health Center and transition treatment program afterward and that Plaintiff has been in multiple drug and alcohol treatment programs.

Dr. Hickman administered the Mental Status Exam, the Wechsler Adult Intelligence Scale-III and the Minnesota Multiphasic Personality Inventory-2. [R. 359-366]. He reported on the results of each test.

On the Mental Status exam, Dr. Hickman observed that Plaintiff's speech was clear, fluent and spontaneous with normal prosody. Plaintiff's thought processes were relevant, coherent and goal-directed without any loosening of associations, tangential thinking, blocking or bizarre content. His affect was blunted and his mood was depressed. [R. 360]. On the general intelligence test, Plaintiff obtained a VIQ (verbal) of 83, a PIQ (performance) of 76 and a FSIQ (full scale) of 78. Dr. Hickman set out all Plaintiff's verbal and

4

performance subtest scores and percentiles and detailed Plaintiff's performance in each category. [R. 361-362]. With regard to personality functions, Dr. Hickman reported Plaintiff was open and candid about himself to the point of being self-critical and presenting himself in the worst possible light. [R. 362]. He said:

> He was consistent in his responses and reported maximum psychological turmoil and discomfort. He obtained a severely limited 8-4-7-2-6-0-1-3 profile. Individuals with an 8-4 profile are typically characterized by a chronic schizoid adjustment if they're not schizophrenic. They have difficulty with close, interpersonal relationships, distrust others and are socially withdrawn. They are dissatisfied with their relationships with other people but their angry, resentful qualities, which they have difficulty modulating, increase their alienation from others. They see the world as dangerous and other people are rejecting and unreliable. Their behavior is typically unpredictable and non-conforming at best. They frequently get into social and legal difficulties because of poor judgment and their problems with logic and thinking. Their crimes are often poorly planned and executed and sometimes involve bizarre behavior.

[R. 362].

Dr. Hickman assessed Plaintiff's level of functioning in the borderline range of mental ability:

> He has markedly impaired ability to retrieve recent verbal information but no difficulty retrieving visual spatial information. He has average reading and spelling skills but borderline math skills. He has borderline ability to comprehend and sequenced pictures of social events and is socially alienated. His ability to attend to the relevant visual details of his environment is markedly impaired. He reports severe social alienation, anger and resentment, difficulties with thinking, depression and bizarre sensory experiences. He has abused substances and has been in prison most of his adult life. He has been out of prison for five years and lives in a trailer behind his parents' house. He never married and does not have any children or social functioning. He is independent for activities of daily living. [R. 363].

Dr. Hickman's diagnosis was:

| | |
|---|---|
| Axis I | Pain disorder associated with both psychological factors and a general medical condition<br>Chronic alcohol dependence in recent remission by claimant report<br>Chronic poly-substance dependence in recent remission by claimant report<br>Nicotine dependence<br>Depressive disorder |
| Axis II | Features of an anti-social personality disorder |
| Axis III | Bulging cervical disk with pain radiating to left shoulder |
| Axis IV | Marked psychosocial stress from social alienation, unemployment and lack of financial resources |
| Axis V | GAF - 60, moderate cognitive, emotional and personality difficulties |

[R. 363]. Dr. Hickman said: "I think Mr. Nichols' prognosis is guarded to poor because of his personality disorder and chronic substance abuse." *Id.* He thought Plaintiff was not competent to manage his own funds because of his chronic substance abuse and personality disorder. *Id.*

Dr. Hickman attached to his report a Mental Medical Source Statement. [R. 364-366]. As recorded on that statement, Dr. Hickman found no limitation in Plaintiff's ability: to remember locations and work like procedures; to understand, remember and carry out very short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to make simple work related decisions; to interact appropriately with the general public; to ask simple questions and request assistance; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. *Id.* He assessed no significant limitation in Plaintiff's ability: to  complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to get along with co-workers or peers without distracting them or exhibiting behavior extremes; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. [R. 365]. He determined Plaintiff had a moderate limitation in ability: to understand, remember and carry out detailed instructions; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; and to accept instructions and respond appropriately to criticism from supervisors. [R. 364-365].

## **Discussion**

Plaintiff claims the ALJ did not consider the Axis I and II diagnoses set forth by Dr. Hickman. [Dkt. 11, p. 5]. The Court disagrees.

At the supplemental hearing, the ALJ read Dr. Hickman's diagnoses directly from the report into the record as part of his hypothetical question to a vocational expert. [R. 499]. The ALJ offered the following RFC "based upon these diagnoses" to the VE:

> This individual would be able to carry out and perform simple, unskilled work. He would have to have -- he would be okay for supervisors and coworkers for work related purposes only. He should have minimal contact with the general public. And he would be able to adapt to a work situation.

*Id.*

In his written decision, the ALJ summarized Dr. Hickman's findings in detail. [R. 23-24]. He included functional limitations in his RFC that are consistent with Dr. Hickman's Mental Medical Source Statement and he referred to the doctor's report during his credibility analysis. [R. 20, 26]. He adopted the VE's testimony in response

to the above hypothetical in his step four and five findings. [R. 28]. It is clear, therefore, that the ALJ considered Dr. Hickman's report and relied upon it for his RFC determination and step four and five findings. The ALJ was not required to designate every factor under each Axis diagnosis set forth by Dr. Hickman as a severe impairment in his written decision. *See Oldham v. Astrue*, 509 f.3d 1254, 1256-57 (10th Cir. 2007) (Once the ALJ made an explicit finding that the claimant suffered from at least one severe impairment, he satisfied the analysis for purposes of step two.). The Court finds the ALJ properly considered Dr. Hickman's report and statement.

The ALJ determined Plaintiff has severe mental impairments of history of polysubstance abuse in remission, by claimant report, and borderline intellectual functioning. [R. 19]. At step three, the ALJ applied what he referred to as the "B" criteria of the listings and found Plaintiff's mental impairments do not impose more than a moderate degree of limitation on his activities of daily living, in maintaining social functioning and maintaining concentration, persistence or pace or result in one or more episodes of decompensation of extended durations. [R. 20]. The PRT form[2] to which Plaintiff refers tracks the requirements of the "B" criteria of the listings. *See Cruse v. U.S. Dept. of Health & Human Svs.* 49 F.3d 614; 20 C.R. R. § 404.1520a(c)(2), (3)(4); 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05(D), 12.09(D) *Substance Addiction Disorders,*

---

[2] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The degree of functional loss resulting from the impairment must be rated in four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §1520a(b)(3). The pertinent findings and conclusions required in the application of the technique, previously used to complete a PRT form, supported by a narrative rationale, are now required in the body of the decision. 20 C.F.R. § 404.1520a; *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746; 50, 757 (Aug. 12, 2000). "The decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

*Depressive syndrome.* Plaintiff's contention that the ALJ committed reversible error by not using the "technique" is therefore without merit.

Plaintiff's argument that Dr. Hickman's RFC statement is inconsistent with the findings and conclusions in his narrative report are equally unavailing. [Plaintiff's Reply, Dkt. 15]. The Mental Medical Source Statement provides a form for the physician to record his summary conclusions regarding Plaintiff's abilities to engage in specific work activities and is based on clinical findings and professional opinion, not upon subjective statements of the claimant. [R. 364-366]. In the narrative portion of the report that preceded the statement, Dr. Hickman described typical characterizations of individuals with Plaintiff's psychological profile. [R. 362]. He then detailed Plaintiff's subjective statements and specific test results. [R. 359-363]. Dr. Hickman found many of those typical characterizations were exhibited by Plaintiff and his opinion regarding Plaintiff's ability to perform work functions reflected those findings. The Court finds no conflict between the statement and the narrative report and concludes the ALJ's reliance upon Dr. Hickman's statement with regard to Plaintiff's abilities to engage in work activities for his RFC findings was proper. *See Wall v. Astrue,* 561 F.3d 1048, 1064 (10th Cir. 2009); 20 C.F.R. § 404.1527(d) (explaining how the Social Security Administration weighs medical opinions).

### Credibility Determination

Plaintiff faults the ALJ for concluding Plaintiff's credibility was diminished by his extensive legal history and arrests. [Dkt. 11, p. 8; R. 25]. Plaintiff argues his "8-4 MMPI profile" and "features of Antisocial Personality Disorder" account for his "bizarre illegal conduct" and that the ALJ ignored these points. As discussed above, the Court has

9

determined that the ALJ properly considered Dr. Hickman's report and relied upon the doctor's statement of Plaintiff's abilities to perform work-related activities for his RFC findings. As pointed out by counsel for the Commissioner, Plaintiff's illegal activities were not the sole factor considered by the ALJ in his credibility determination. [Dkt. 15, p. 7-8]. The ALJ weighed Plaintiff's allegations of disabling functional limitations against the medical evidence from Plaintiff's treating and examining sources, Plaintiff's performance of carpentry work, drywall installation, yard work and housework activities after his alleged disability onset date, his activities while in prison and testimony given at both hearings. Because the ALJ linked his credibility findings to the substantial evidence in the record and discussed his reasons for concluding that Plaintiff's subjective allegations were not entirely credible, the Court finds no basis for upsetting the ALJ's credibility determination. *See Kepler v. Chater*, 68 F.3d 387 (10th Cir.1995) (ALJ must set forth the specific evidence he relies on in evaluating the claimant's credibility); *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.2001) (so long as ALJ sets forth specific evidence relied on in evaluating claimant's credibility, the dictates of *Kepler* are satisfied).

### Parents' Testimony

Plaintiff contends the ALJ "erroneously failed to discuss [his] mother's and father's testimony that supported [his] claim of mental disability and failed to explain why he implicitly rejected it." [Dkt. 11, p. 9]. Again, the Court disagrees. The ALJ noted the testimony of Plaintiff's parents in his decision. [R. 26]. As part of his credibility analysis, he pointed to the portions of their testimony that dealt with Plaintiff's physical activities. *Id.* Plaintiff's parents testified that when Plaintiff is not drinking or doing

drugs, "[h]e's great" and "he's a good hand." [R. 481, 486, 488]. Contrary to Plaintiff's argument, the ALJ was not required to address every statement the parents made that corroborated Plaintiff's need for special education and that described his behavior when he was abusing drugs and alcohol. The ALJ determined that Plaintiff's impairments in these two areas are severe impairments and assessed an RFC accordingly. Reiteration of that portion of the parents' testimony was therefore not necessary. "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir.2004). Because the ALJ's written decision reflects that he did consider the parents' testimony, the Court finds no grounds for reversal in this case. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (ALJ not required to make specific written findings of credibility where written decision reflects the testimony was considered).

### Hypothetical

Plaintiff asserts the ALJ erred in rejecting the VE's testimony elicited by his attorney in the "third hypothetical" he posed using limitations selected from Dr. Hickman's "narrative report." [Dkt. 11, p. 12-13]. As discussed above, the Court concludes the ALJ's reliance upon Dr. Hickman's opinion regarding Plaintiff's abilites to perform work functions was proper. Hypothetical questions need only reflect impairments and limitations that are borne out by the evidentiary record. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996). The ALJ was not required to accept testimony based upon a hypothetical that includes impairments he has not accepted as true. The Court finds no grounds for reversal on this basis.

## **Conclusion**

The ALJ's decision demonstrates that he properly considered all of the medical reports and other evidence in the record in his conclusion that Plaintiff retained the capacity to perform light level work with additional limitations. The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 20th day of August, 2009.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE